## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| DAVID L. J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00010-TWP-DML |
| | ) |
| ANDREW M. SAUL, Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff David L. J.[1] ("David J.") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[2] For the following reasons, the Court **REMANDS** the decision of the Commissioner for further consideration.

### I.     BACKGROUND

**A.     Procedural History**

On February 16, 2016, David J. protectively filed his applications for DIB and SSI, alleging a disability onset date of December 31, 2015, due to macular degeneration, arthritis in the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

spine, neck and hips, gout, Hepatitis C, cirrhosis, weakness, bipolar disorder, post-traumatic stress disorder, and psychotic tendencies. David J. 's applications were initially denied on April 28, 2016, and again on reconsideration on September 7, 2016. David J. filed a written request for a hearing on October 14, 2016. On August 28, 2018, a hearing was held before Administrative Law Judge Thuy-Anh T. Nguyen (the "ALJ"). David J. was present via video conference and was represented by counsel, William J. Jenner. William T. Cody, a vocational expert (the "VE"), also appeared and testified at the hearing. On January 10, 2019, the ALJ denied David J. 's applications for DIB and SSI. Following this decision, on February 7, 2019, David J. requested review by the Appeals Council. On November 12, 2019, the Appeals Council denied David J. 's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On January 13, 2020, David J. filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.** **Factual Background**

The Court notes that this factual background is not intended to be a comprehensive recitation of the medical history or the daily activities of David J. . At the time of his alleged disability onset date, he was forty-nine years old, and he was fifty-two years old at the time of the ALJ's decision. He is now fifty-five years old. David J. has an employment history of working as a sandblaster, forklift operator, and warehouse worker.

On March 14, 2016, Larry Freudenberger, Psy.D. ("Dr. Freudenberger"), a clinical psychologist, examined David J. and evaluated his mental condition. He told Dr. Freudenberger that he had been married in the past, had four adult children, and was currently living with his mother. On mental status examination, Dr. Freudenberger found that David J. was fully oriented, his mood was somewhat anxious and depressed, and his affect was somewhat restricted. He

demonstrated adequate memory, calculation ability, and fund of information. David J. had no delusional responses or thought disorder and no ongoing visual or auditory hallucinations, but he told the examining psychologist that he had a hallucination approximately a month earlier. David J. listed a variety of daily activities that included dressing, grooming, and bathing himself, driving an automobile, meal preparation, household cleaning, and laundry. Dr. Freudenberger diagnosed him with major depressive disorder, unspecified anxiety disorder, rule out bipolar disorder, and a history of alcohol abuse (Filing No. 8-9 at 50–53).

On April 28, 2016, Jerry Smartt, Jr., M.D. ("Dr. Smartt"), a non-examining state agency physician, examined David J. 's medical records and submitted an RFC finding that he had the ability to perform light work. Dr. Smartt opined that David J. could perform light work with occasional postural limits on climbing, stooping, kneeling, crouching, and crawling; frequently balancing; visual acuity limits to avoid reading fine and small print but able to read medium and large print, and avoid driving and working in dimly lit areas; and environmental limits to avoid concentrated exposure to wetness and hazards. (Filing No. 8-3 at 5–15.) On September 2, 2016, J. Sands, M.D. ("Dr. Sands"), another non-examining state agency physician, examined David J. 's medical records and offered a similar opinion and RFC finding as that offered by Dr. Smartt. *Id.* at 36–46.

In April and September 2016, state agency psychologists Patricia Garcia, Ph.D. ("Dr. Garcia"), and Donna Unversaw, Ph.D. ("Dr. Unversaw"), reviewed David J. 's medical records and assessed mental capacity limits of unskilled tasks within his physical limitations. *Id.* at 24–27, 56–58.

On April 26, 2017, David J. was examined by Robert A. Goodin, M.D. ("Dr. Goodin"), of Louisville Orthopaedic Clinic, who found that he had left hip primary osteoarthritis, lumbar

degenerative disc disease, and right and left rotator cuff tendonitis. Dr. Goodin noted that David J's hip looked fairly good overall, and most of his symptoms were coming from his lower back. Dr. Goodin recommended physical therapy (Filing No. 8-13 at 41–43). David J. had an MRI on September 5, 2017, which revealed "[l]arge central disc protrusion at C5/6 level asymmetric to the right resulting in mild spinal canal stenosis and severe right neural foraminal narrowing with probable compression of the right C6 nerve root." (Filing No. 8-9 at 92.) Thereafter, from March 7 through May 7, 2018, David J. attended physical therapy, with occasional no-shows to his appointment. His physical therapist opined, "as [David J. 's] pain is chronic in nature, it is unlikely [physical therapy] will alleviate his pain". (Filing No. 8-11 at 6–7.)

## II.     DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a

4

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are

5

supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III.  THE ALJ'S DECISION

The ALJ first determined that David J. met the insured status requirement of the Act through March 31, 2016. The ALJ then began the five-step sequential evaluation process. At step one, the ALJ found that David J. had not engaged in substantial gainful activity since December 31, 2015, the alleged onset date of his disability. At step two, the ALJ found that David J. had the following severe impairments: cervical and lumbosacral degenerative disc disease, gout, degeneration of shoulder, degeneration of left hip, chronic obstructive pulmonary disease (COPD), loss of visual acuity, affective disorder, anxiety disorder, and alcohol or substance use disorder. The ALJ also found that David J. had other non-severe impairments. At step three, the ALJ

concluded that David J. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

In determining David J. 's RFC, the ALJ explained,

[He] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to occasionally stooping, kneeling, crouching, crawling, or climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally balancing but never balancing or walking on slippery surfaces; never overhead reaching with non-dominant left upper extremity; occasionally overhead reaching with the dominant right upper extremity; avoiding reading fine and small print, but able to read medium to large print; avoiding concentrated exposure to wetness, humidity, unprotected heights, fumes, odors, dusts, gases and poor ventilation; performing simple, routine tasks; occasionally interacting with the general public; frequently interacting with coworkers and supervisors; and maintaining no fast pace or high production standard jobs, with only occasional changes in the work setting.

([Filing No. 8-2 at 21](#).)

At step four, the ALJ determined that David J. was unable to perform his past relevant work as a sandblaster or a warehouse worker because the demands of this past relevant work exceeded his RFC. At step five, the ALJ determined that David J. was not disabled because there were jobs that existed in significant numbers in the national economy that David J. could perform, considering his age, education, work experience, and RFC. These jobs included sorter, packer, and cleaner. Therefore, the ALJ denied David J. 's applications for SSI and DIB because he was found to be not disabled.

## IV. <u>DISCUSSION</u>

In his request for judicial review, David J. argues that the Commissioner's decision should be reversed, and he should be awarded disability benefits, or the case should be remanded for further proceedings. He argues that the ALJ failed to properly evaluate the medical evidence as to

7

his physical limitations, and the ALJ failed to properly account for his limitations in concentration, persistence, and pace. The Court will address each argument in turn.

### A. Medical Evidence of Physical Limitations

David J. first argues that the ALJ's hypothetical presented to the VE did not properly account for his physical limitations. The hypothetical limited David J. to light work, which would require standing for six out of eight hours and occasionally lifting and carrying up to twenty pounds. David J. argues that it is difficult to determine how the ALJ came to this conclusion given that she only gave some weight to the assessment of Dr. Smartt, a non-examining state agency medical consultant. David J. asserts that, when an ALJ rejects the opinions of the state agency doctors and rejects the opinions of the treating physicians, this leaves an evidentiary deficit, which the ALJ cannot fill with her own lay opinion of RFC. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010).

David J. argues that, because the ALJ is not a doctor, she cannot independently know how his impairments will cause functional limitations. Here, the ALJ recognized the need to further limit her hypothetical due to findings contained in an MRI that followed the assessment by the state agency doctor, and she further limited David J. as to overhead reaching but failed to assess how his documented back problems would limit his ability to stand and lift. David J. asserts it is impossible for the ALJ to interpret findings from an MRI and how those would equate to physical limitations because she is not a physician.

David J. explains that most of the medical evidence came after the non-examining state agency medical assessment. In April 2017, Dr. Goodin examined David J. and, after reviewing x-rays, found he had left hip osteoarthritis, lumbar degenerative disc disease, and left and right rotator cuff tendonitis. David J. 's September 5, 2017 MRI revealed "[l]arge central disc protrusion

at C5/6 level asymmetric to the right resulting in mild spinal canal stenosis and severe right neural foraminal narrowing with probable compression of the right C6 nerve root." (Filing No. 8-9 at 92.) From March through May 2018, David J. attended physical therapy, and the physical therapist opined that his pain was chronic in nature so it was unlikely that physical therapy would alleviate his pain. David J. argues the ALJ did not rely on any medical opinions in this case as she gave all of them either some or little weight. He argues, by doing this, the ALJ left unanswered the question of what evidence she relied upon in determining the hypothetical; the ALJ failed to build a logical bridge from the evidence to the conclusion.

The Commissioner responds that substantial evidence supports the ALJ's RFC determination and the weight that she gave to the medical source opinions. Judicial review considers whether the ALJ's decision is supported by substantial evidence, and when making the determination, the ALJ considers objective medical evidence, treatment, and physicians' opinions and observations as well as the claimant's own statements about his limitations and activities. The ALJ reasonably considered and assessed all of these types of evidence when concluding David J. had the capacity to perform a limited range of light work. Her decision built a logical bridge between the evidence and her conclusions.

The Commissioner explains the ALJ did not model her RFC determination on the opinion of any one doctor but rather on the record as a whole. The regulations are clear that the determination of a claimant's RFC at the administrative level is the responsibility of the ALJ alone. *See* 20 C.F.R. § 404.1546(c). In determining the RFC, an ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

The Commissioner argues that David J. is simply mistaken in arguing the ALJ did not support her conclusions with medical evidence regarding physical limitations. In her written decision, the ALJ stated that she gave some weight to the medical opinions on functional capacity from reviewing state agency physicians Dr. Smartt and Dr. Sands (Filing No. 8-2 at 27, referring to Exhibits B2A and B6A at Filing No. 8-3 at 16–29, 47–61), and their medical opinions provided substantial support for the ALJ's RFC determination. The ALJ assessed a similar range of light exertion functional capacity that the state agency reviewing physicians assessed, including the identical capacity for standing six hours out of eight and occasionally lifting and carrying up to twenty pounds.

The Commissioner additionally notes, to the extent the ALJ's RFC determination differed from the state agency reviewing physicians' opinions, the ALJ limited David J. to a somewhat greater degree. Where the state agency physicians assessed a capacity for frequent balancing, the ALJ assessed a capacity for occasional balancing and never balancing or walking on slippery surfaces. Similarly, the ALJ assessed additional reaching and climbing limitations.

The ALJ did not completely discount David J. 's testimony regarding how his pain and other symptoms affected his ability to perform certain activities, which is shown by the ALJ's decision to limit the range of light work with additional balancing, walking, reaching, and climbing limitations in the RFC. In assessing the additional limitations, the ALJ explained that she found the subsequent record showed David J. had mild gait deficiencies that were not apparent at the time of the state agency physicians' evaluations, which supported greater balance and ambulation limitations. The Commissioner explains that, earlier in her decision, the ALJ cited specific records that showed a normal gait in early 2017 but some slight gait abnormalities in late 2017 and 2018. The ALJ further explained that the 2017 MRI scans of David J. 's cervical spine and shoulder

studies showed David J. needed greater reaching restrictions and had an inability to use the upper extremities for climbing ladders, ropes, or scaffolds. The ALJ also weighed evidence of David J. 's activities, such as using a welder, as well as his lack of follow-through with physical therapy or pain management, to find that the limits assessed adequately accounted for his shoulder impairment.

      The Commissioner asserts that, in her written decision, the ALJ expressly stated that she gave some weight to the state agency physicians' opinions assessing a restricted range of light work capacity and also explained that additional medical evidence submitted after their opinions provided a basis for even greater limits. None of David J. 's treating, examining, or reviewing physicians provided a medical opinion that assessed greater restrictions on David J. 's functional capacity than the ALJ found. Thus, the state agency physicians' opinions and subsequent medical records provided substantial evidence for limiting David J. 's physical capacity. The ALJ provided a reasoned basis for the functional capacity restrictions, and thus, the Commissioner argues, the Court should affirm the ALJ's decision.

      After reviewing the parties' arguments, the ALJ's written decision, and the medical and other evidence in the record, the Court concludes that the Commissioner's position is well-taken and supported by the evidence and case law. The ALJ did not (as suggested by David J. ) reject the opinions of the state agency doctors and the treating physicians thereby leaving an evidentiary deficit or gap to fill with her own lay opinion. The ALJ gave some weight to the RFC opinions of the two state agency doctors and provided additional RFC limitations based on the subsequent medical evidence such as Dr. Goodin's examination and opinion, the x-rays, and the September 2017 MRI findings. The ALJ also took into account David J. 's treatment and his daily activities

when making the RFC determination, and she sufficiently explained the rationale for her conclusions based upon all the evidence in the record.

The ALJ's decision is supported by substantial evidence in the form of the medical evidence and the records and testimony of David J. 's treatment and activities. The Court does not reweigh the evidence or substitute its own judgment for that of the ALJ when the ALJ's decision is supported by substantial evidence. *Overman*, 546 F.3d at 462; *Dixon*, 270 F.3d at 1176. Therefore, the Court concludes that David J. 's argument regarding physical limitations and medical evidence does not warrant reversal and remand in this case.

### B.     Limitations in Concentration, Persistence, and Pace

Next, David J. argues the ALJ's hypothetical did not properly account for his limitations with concentration, persistence, and pace. David J. asserts the hypothetical provided limitations of "occasionally interacting with the general public; frequently interacting with coworkers and supervisors; and maintaining no fast pace or high production standard jobs, with only occasional changes in the work setting." (Filing No. 8-2 at 21.) The ALJ and a state agency medical consultant, Dr. Garcia, found that David J. had moderate difficulties with concentration, persistence, and pace. However, he argues, the hypothetical provided by the ALJ did not account for any limitations as to one's ability to concentrate.

David J. asserts moderate limitations in concentration, persistence, and pace cannot be accounted for in an RFC and hypothetical by limiting a claimant to simple repetitive tasks, limited interaction with coworkers and supervisors, few if any workplace changes, and no fast paced production. *See Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857–59 (7th Cir. 2014). He argues the hypothetical in this case almost mirrors the limitations in the *Varga* and *Yurt* cases where the court found that those limitations did not properly address a

12

moderate limitation in concentration, persistence, and pace. Therefore, the ALJ's decision should be reversed and the case remanded.

In response, the Commissioner argues that David J. failed to identify any medical source opinion or other objective evidence that would support greater restrictions in the areas of concentration, persistence, and pace. The Commissioner argues that the cases upon which David J. relies, *Varga* and *Yurt*, held that when an ALJ accepts a David J. 's limitations, the ALJ must include them in the RFC assessment and in the hypothetical questions to the VE; in other words, the RFC limits in the ALJ's decision and those in the hypothetical question to the VE must match. In this case, the ALJ assessed the exact same limits in her RFC finding as she stated in her hypothetical question to the VE.

The Commissioner argues that the ALJ explained how the limits in her mental work capacity finding accommodated David J. 's moderate limitations in the various mental functioning areas including concentration, persistence, and pace, relying in part on the assessment of examining psychologist Dr. Freudenberger and the "unskilled work" limit from state agency psychologists Dr. Garcia and Dr. Unversaw. The ALJ then mirrored that mental RFC in the hypothetical questions to the vocational expert. The ALJ explained in her written decision the bases for each of the limitations in the RFC and connected them to evidence in the record. Therefore, the Commissioner argues, the ALJ adequately accommodated David J. 's moderate limitations in concentration, persistence, and pace in her RFC finding.

The Commissioner further argues that David J. seems to contend that the ALJ's finding of moderate concentration limits meant that he could not do fulltime competitive employment. However, the agency's new regulation clarifies that individuals rated as having moderate difficulties can function fairly on a sustained and independent basis. *See* 20 C.F.R. Pt. 404, subpt.

P, app. 1 § 12.00(F)(2). The Commissioner asserts that David J. has presented no evidence to suggest that greater limitation than those imposed by the ALJ would be appropriate, and substantial evidence supports the ALJ's findings and conclusions as to the mental RFC. The Commissioner concludes that no authority supports David J. 's apparent position that the mental RFC finding was *per se* incompatible with moderate concentration, attention, or interaction limitations. There is not a *per se* requirement for any particular mental RFC merely because an ALJ finds at step three that a claimant has a moderate rating in the broad functional category.

Upon review of the ALJ's written decision, the record evidence, and the parties' arguments, the Court determines that the ALJ failed to adequately account for David J. 's moderate difficulties with concentration, persistence, and pace. The Commissioner's argument focuses on whether evidence supports the ALJ's RFC determination and whether the RFC matched the hypothetical presented to the VE. The Commissioner's argument also focuses on whether the evidence supports the ALJ's finding that David J. had moderate difficulties with concentration, persistence, and pace. The RFC and the hypothetical did match, and the ALJ did explain her rationale for reaching her conclusions as to RFC and David J. 's moderate difficulties with concentration, persistence, and pace. However, the problem with the ALJ's decision is that she failed to show that she accounted for those moderate difficulties in the RFC and the hypothetical presented to the VE.

There is nothing in the record or in the transcript from the administrative hearing that suggests the VE reviewed the medical record to apprise the VE of David J. 's moderate difficulties with concentration, persistence, and pace. The colloquy about concentration during the hearing was so fleeting that it cannot fairly be said that the VE would have been aware of moderate difficulties and the resulting limitations (*see* Filing No. 8-2 at 50).

14

The ALJ found that David J. had moderate difficulties with concentration, persistence, and pace, yet she did not include anything in the RFC and hypothetical to address his moderate difficulties with concentration, persistence, and pace. The Seventh Circuit recently has reiterated the need to account for these moderate difficulties in the RFC and hypothetical with more than just boilerplate language:

> We agree that the ALJ erred by not including DeCamp's "moderate" limitations in concentration, persistence, and pace in the hypothetical question to the vocational expert. The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. The ALJ opted instead to limit DeCamp to "unskilled work" with no "fast-paced production line or tandem tasks." We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace. *See Moreno*, 882 F.3d at 730; *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). The ALJ's analysis is similarly flawed with respect to DeCamp's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace as found by Dr. Goldstein. An ALJ need not use "specific terminology," but we have "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014); *see also Winsted v. Berryhill*, No. 18-2228, 915 F.3d 466, 2019 U.S. App. LEXIS 3995, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). Moreover, the vocational expert did not review DeCamp's medical records, which could have excused the ALJ from stating all DeCamp's limitations. *See Varga*, 794 F.3d at 814; *Yurt*, 758 F.3d at 857.

*DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019).

In this case, the ALJ determined David J. had moderate difficulties with concentration, persistence, and pace. But her RFC determination and corresponding hypothetical consisted of language the Seventh Circuit has found to be deficient when the VE has not reviewed the medical

15

record. The ALJ limited David J. to "performing simple, routine tasks; occasionally interacting with the general public; frequently interacting with coworkers and supervisors; and maintaining no fast pace or high productions standard jobs, with only occasional changes in the work setting." (Filing No. 8-2 at 21.) Based on the Seventh Circuit's guidance, this is not sufficient to account for David J. 's moderate difficulties with concentration. This deficiency requires remand for further consideration and explanation.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **REMANDED** for further proceedings consistent with this Entry as authorized by Sentence Four of 42 U.S.C. § 405(g).

**SO ORDERED.**

Date: 3/25/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Joseph Jenner
JENNER & PATTISON
jjenner@wjennerlaw.net

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE
julian.wierenga@usdoj.gov